**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

DYLAN HURT,

Petitioner, : Case No. 1:26-cv-064

- vs - District Judge Susan J. Dlott
Magistrate Judge Michael R. Merz

WARDEN,
London Correctional Institution,

:

Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus action under 28 U.S.C. § 2254, brought by Petitioner with the assistance of counsel, is before the Court for decision on the Petition (ECF No. 1), which is supported by a Brief (ECF No. 2[1]), the State Court Record (ECF No. 12), the Return of Writ (ECF No. 13), and Petitioner's Reply (ECF No. 17).

When originally filed, this case was randomly referred to Magistrate Judge Caroline H. Gentry, but was recently transferred with her consent and pursuant to Amended General Order 22-05 to the undersigned to help balance the Magistrate Judge workload in this District (Transfer Order, ECF No. 14).

## Litigation History

On June 26, 2020, the Hamilton County Grand Jury indicted Petitioner for attempted murder

[1] This document was re-filed at the Court's request with citations from the State Court Record. ECF No. 21.

in violation of Ohio Revised Code § 2903.02(A), felonious assault in violation of Ohio Revised Code § 2903.11(A)(1)(2), having weapons while under disability in violation of Ohio Revised Code § 2923.13(A)(2) and 2923.12(A)(2), aggravated murder in violation of Ohio Revised Code § 2903.01(A), and murder in violation of Ohio Revised Code § 2903.02(B). Counts 1-5 and 8-11 all contained firearm specifications. (Indictment, State Court Record, ECF No. 12, Ex. 1). Counts 1 through 7 deal with events occurring on April 7, 2020; counts 8 through thirteen deal with events occurring on April 15, 2020.

Hurt was separately indicted for attempting to avoid arrest on the original indictment. On motion of the State and over Hurt's objection, these cases were consolidated for trial (State Court Record, ECF No. 12, Exs. 6, 7, and 8).

Hurt's attorney Monika Roth moved January 23, 2022, to sever the separate dates (Motion to Sever, State Court Record, ECF No. 12, Ex. 5). Before that Motion was ruled on, Attorney Roth and her co-counsel Nicholas withdrew because of "irreconcilable differences" with Hurt (Motion, State Court Record ECF No. 12, Ex. 9). New counsel, Attorneys Rubinstein and McKenna, were then appointed as of March 15, 2022. *Id.* at Exs. 11. On April 17, 2023, Hurt moved *pro se* to remove these attorneys and they themselves moved to withdraw April 25, 2023. *Id.* at Exs. 12, 13.

On May 5, 2023, Attorney Rubenstein, still representing Hurt, issued a subpoena for Leaunte Baltimore to appear on May 8, 2023, to testify at trial on Hurt's behalf (State Court Record, ECF No. 12, Ex. 14). On motion of Baltimore's attorneys, the trial judge quashed the subpoena upon Baltimore's assertion through counsel of his Fifth Amendment privilege.

The case then proceeded to trial and the jury acquitted Hurt on Counts 7 and 12 but convicted on the remaining counts. He was sentenced to an aggregate term of twenty to twenty-five years consecutive to a life sentence for the aggravated murder.

New counsel was appointed and Hurt appealed to the First District Court of Appeals, pleading five assignments of error, but the conviction was affirmed. *State v. Hurt,* 2024-Ohio-3115 (Ohio App. 1st Dist. Aug. 16, 2024). The Ohio Supreme Court declined to exercise jurisdiction over a subsequent appeal. *State v. Hurt*, 176 Ohio St. 3d 1411 (2024).

On March 7, 2025, Hurt filed *pro se* a Motion for Leave to File a Delayed Motion for New Trial Based on Newly Discovered Evidence (State Court Record, ECF No. 12, Ex. 32). Trial Judge Leslie Ghiz denied the Motion and Petitioner appealed to the First District Court of Appeals which granted him leave to file a delayed appeal but then affirmed (State Court Record, ECF No. 12, Ex. 45). The Ohio Supreme Court declined to exercise jurisdiction over a further appeal.

Represented again by counsel, Attorney Jeffrey Brandt who represents him in this case, Hurt filed his Habeas Corpus Petition in this Court January 22, 2026, pleading the following grounds for relief:

> **Ground One**: The state court ruling was contrary to or unreasonably applied clear Supreme Court case law or was based on an unreasonable determination of the facts, as Hurt was denied his constitutional right to compulsory process when the trial court refused to call a co-defendant to testify or proffer based simply on the co-defendant's counsel's claim that the co-defendant would invoke the Fifth Amendment.
>
> **Supporting Facts:** Co-defendant Leaunte Baltimore committed offenses with which Hurt was charged. Before trial, Baltimore wrote a statement admitting guilt. Based on the statement, Hurt sought to compel Baltimore's attendance, asking the court to hear from Baltimore to see if he would, in fact, exonerate Hurt and agree to testify for Hurt's defense. The court refused to even hear from Baltimore based simply on his counsel claiming he would invoke the Fifth [Amendment].
>
> **Ground Two**: The state court ruling was contrary to or unreasonably applied clear Supreme Court case law or was based on an unreasonable determination of the facts, as Hurt was denied his

constitutional right to compulsory process when Hurt presented a statement of a witness, a co-defendant, showing the co-defendant had material, favorable testimony for the defense, and the court summarily discredited the statement on speculation, refusing to allow Hurt to call the witness.

**Supporting Facts:** Co-defendant Leaunte Baltimore committed offenses with which Hurt was charged. Before trial, Baltimore wrote a statement admitting guilt. Based on the statement, Hurt sought to compel Baltimore's attendance, asking the court to hear from Baltimore to see if he would, in fact, exonerate Hurt and agree to testify for Hurt's defense. The court denied Hurt's request to call Baltimore on the court's pure speculation that Baltimore's statement was untrue, arbitrarily denying Hurt the right to put on a witness who was able testify on events the witness observed.

**Ground Three**: The state court ruling was contrary to or unreasonably applied clear Supreme Court case law or was based on an unreasonable determination of the facts, as Hurt was denied his constitutional rights to confrontation, due process and fair trial when the court forcibly removed Hurt from trial even though Hurt was not being disruptive and unambiguously asked to remain.

**Supporting Facts:** The court ordered Hurt removed from the courtroom even though Hurt unambiguously stated that he wished to remain present, did not asked to be removed, his conduct was not disruptive, and any ambiguity was created by the court repeatedly questioning Hurt, insisting that he answer questions he had already answered.

**Ground Four**: The state court ruling was contrary to or unreasonably applied clear Supreme Court case law or was based on an unreasonable determination of the facts, as Hurt was denied his constitutional rights to due process and fair trial when the court conducted a joint trial on allegations of separate violent events, prejudicing Hurt.

**Supporting Facts:** Hurt was charged with two completely separate violent events. At no point did the state establish a connection between the separate violent events. And yet the trial court conducted a joint trial on the events, leading to the jury hearing unfairly prejudicial information and allegations on one series of violent events having no relation to the other.

**Ground Five**: The state court ruling was contrary to or unreasonably applied clear Supreme Court case law or was based on

> an unreasonable determination of the facts, as Hurt was denied his constitutional right to the effective assistance of counsel when trial counsel's failure to request a ruling on a pending motion to sever offenses led to plain error review on appeal and therefore prejudiced the defendant on appeal.
>
> **Supporting Facts:** Hurt was charged with two completely separate violent events. At no point did the state establish a connection between the separate violent events. Hurt's original counsel filed a motion to sever the different groupings of charges, objecting to joinder. New counsel adopted the motion and asked for a hearing on it. The hearing was never held, and the courts blamed defense counsel for failing to more forcefully renew the motion or demand a ruling. The state appellate court considered the argument unraised and reviewed for plain error. Under plain error, the court of appeals affirmed. A reasonable probability exists that, on these facts, had the court of appeals reviewed under the standard applicable had new counsel demanded a ruling, the court of appeals would have reversed. Thus, new counsel's errors prejudiced Hurt.
>
> **Ground Six**: The state court ruling was contrary to or unreasonably applied clear Supreme Court case law or was based on an unreasonable determination of the facts, as Hurt was denied his constitutional rights to due process, fair trial, jury trial, and to be convicted only based on evidence of each element proved beyond a reasonable doubt when intent was not proved beyond a reasonable doubt.
>
> **Supporting Facts:** Hurt was innocent of the charges and the state's evidence was insufficient to support the verdicts. The state courts erred in applying what the Sixth Circuit has called the "difficult to apply" standard for when circumstantial evidence is insufficient. Hurt further notes that the co-defendant's affidavit helps show that this is not just a matter of a lack of evidence supporting the verdict as a constitutional and technical matter but also a matter of an innocent man serving a sentence of more than life in prison.

Petition, ECF No. 1, PageID 5-16.

## Analysis

### Grounds One and Two: Denial of Compulsory Process

In his First and Second Grounds for Relief, Hurt claims he was denied his right to compulsory process when the trial court failed to enforce a subpoena which his counsel had issued for co-defendant Leaunte Baltimore. This claim was presented to the First District Court of Appeals on direct appeal and decided by that court as follows:

> {¶9} After the state produced a purported confession[2] authored by Hurt's codefendant Leaunte Baltimore, Hurt subpoenaed Baltimore to testify at trial. The trial court granted Baltimore's motion to quash Hurt's subpoena based on Baltimore's attorney's representation that Baltimore would invoke his Fifth Amendment right against self-incrimination and refuse to answer any questions asked by Hurt's counsel.
>
> * * *
>
> **A. First assignment of error: Quashed subpoena**
>
> {¶41} In his first assignment of error, Hurt argues that the trial court abused its discretion when it quashed his subpoena of his codefendant Baltimore without first holding an evidentiary hearing. Before trial, the state produced a document purportedly authored by Baltimore in which he took sole responsibility for both shootings and stated that Hurt was not involved. Hurt's attorneys subpoenaed Baltimore to testify at Hurt's trial.
>
> {¶42} Baltimore's attorneys moved to quash the subpoena and represented to the court that they had advised Baltimore not to testify and Baltimore "was quite clear that he was not interested in"

---

[2] The Court presumes the State disclosed this document pursuant to its duty under *Brady v. Maryland*, 373 U.S. 83 (1963), to disclose potentially exculpatory evidence to the defense. The alleged confession does not appear to be part of the State Court Record; the Magistrate Judge has been unable to find a citation to it in the briefing.

testifying for the state or Hurt. Baltimore's attorneys reaffirmed this position later in the trial. At the time, Baltimore faced criminal charges related to the shootings. The trial court quashed the subpoena without hearing directly from Baltimore.

1. Sixth Amendment Compulsory Process

{¶43} We review a trial court's ruling on a motion to quash a subpoena for an abuse of discretion. *State v. Bussle*, 2017-Ohio-4045, ¶ 14 (11th Dist.).

{¶44} The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides in relevant part, "In all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor." *See Gannett Co. v. DePasquale*, 443 U.S. 368, 379 (1979). "Few rights are more fundamental than the right of an accused to present witnesses on his behalf." *State v. Brown*, 64 Ohio St.3d 649, 652 (1992). A defendant's right to present a complete defense, however, can run counter to a potential witness's privilege against self-incrimination found in the Fifth Amendment. *Hoffman v. United States*, 341 U.S. 479, 485-486 (1951).

{¶45} Before excusing a witness on Fifth Amendment grounds, trial courts must ensure that the witness's assertion of privilege is valid. *State v. Arnold*, 2016-Ohio-1595, ¶ 45. Where a witness invokes the Fifth Amendment privilege, trial courts must determine if, should the witness directly answer the question, that answer could provide evidence tending to establish an element of an offense or incriminate the witness. *Id.*

{¶46} Trial courts must "conduct a sufficient inquiry to determine that the witness will not offer any testimony" and instead intends to invoke the Fifth Amendment privilege as it relates to all proposed lines of questioning. *State v. Wade*, 2023-Ohio-3490, ¶ 58 (10th Dist.). The trial court must ensure the defendant seeks to elicit only incriminating testimony. *Id.* A trial court need not compel a person to testify on behalf of a criminal defendant when it determines that, rather than offering testimony, the person will merely invoke the Fifth Amendment privilege against self-incrimination. *State v. Kirk*, 72 Ohio St.3d 564, 569 (1995); *but see Rios-Vargas v. People*, 2023 CO 35 (reasoning that the Fifth Amendment right is an "option of refusal, not a prohibition of inquiry," and holding that a defendant may call a nonparty alternate suspect and question the witness in front of the jury); *State v. Herbert*, 234 W.Va. 576, 584 (2014) (same). Moreover, there is no Sixth Amendment right to call a

witness to the stand for the *sole purpose* of having that witness invoke the Fifth Amendment in front of the jury. *Kirk* at 569.

{¶47} A trial court conducts a sufficient inquiry where a witness's attorney informs the court that the witness has been advised not to testify and the witness does not intend to testify. *See State v. T.S.*, 2021-Ohio-2203, ¶ 31 (10th Dist.); *see also State v. Spangler,* 2017-Ohio-268, ¶ 36 (5th Dist.) ("While [the witness] herself was not directly subject to the trial court's inquiry, [the witness's] interests were represented by her appointed counsel."); *Bussle*, 2017-Ohio-4045, at ¶ 15 (11th Dist.).

**2. Granting the motion to quash was within the trial court's discretion**

{¶48} The trial court did not abuse its discretion in quashing the subpoena issued to Baltimore because his attorneys represented that he would invoke his Fifth Amendment privilege. Hurt intended to question Baltimore about the substance of the alleged confession. He did not suggest that he would question Baltimore about any nonincriminating topic. Because an answer to questions about the alleged confession would have a "reasonable tendency" to incriminate Baltimore, his assertion of the Fifth Amendment privilege was valid. *See Arnold*, 2016-Ohio-1595, at ¶ 45. Given Baltimore's counsel's representations and the only topic about which Hurt intended to illicit testimony—the alleged confession—the trial court conducted a sufficient inquiry.

{¶49} Hurt asserts that the trial court was required to conduct a hearing before quashing the motion. He is correct that this court has stated, "When deciding a motion to quash a subpoena under Crim.R. 17, the trial court must conduct an evidentiary hearing." *State v. Findler*, 2021-Ohio-449, ¶ 6 (1st Dist.). But *Findler* involved a motion to quash a subpoena for documents issued under Crim.R. 17(C). It did not involve the competing constitutional interest presented when the object of the subpoena asserts the Fifth Amendment privilege. While Hurt cites other cases in which trial courts did hold a hearing or voir dire witnesses before ruling on a motion to quash, those cases did not involve an assertion of privilege by a witness. *See State v. Brown*, 64 Ohio St.3d 649, 652 (1992) (trial court erred in quashing subpoena of informant without investigating whether informant's testimony would help defense); *State v. Tuttle*, 2003-Ohio-4260, ¶ 43 (5th Dist.) (trial court quashed subpoena of witnesses after determining that their proffered testimony was not relevant).

> {¶50} While generally a trial court should hold a hearing to determine whether a witness is validly invoking the Fifth Amendment privilege against self-incrimination, under the circumstances of this case—Baltimore's attorneys represented to the court that they had advised Baltimore not to testify, he had no intention of testifying, and Hurt's counsel proposed no line of question that would not incriminate Baltimore—the trial court could clearly ascertain that Baltimore's assertion of his privilege was valid and a hearing was not required.
>
> {¶51} We overrule Hurt's first assignment of error.

*State v. Hurt, supra.*

Respondent defends these two Grounds for Relief on the merits. Because the First District decided them on the merits, that court's decision is entitled to deference unless it is contrary to or an objectively unreasonable application of clearly established Supreme Court precedent. When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86 (2011); *Cunningham v. Shoop,* 23 F.4th 636, 650 (6th Cir. 2022); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000); *Hendrix v. Palmer*, 893 F.3d 906, 917 (6th Cir. 2018).

The record is quite clear that Leaunte Baltimore was an indicted co-defendant with Hurt. Although he allegedly gave a statement which claimed responsibility for the crimes with which Hurt was charged, his attorneys appeared in Hurt's case and moved to quash the subpoena on grounds of Baltimore's Fifth Amendment privilege against self-incrimination. Petitioner concedes that the Fifth Amendment privilege prevents a witness's being forced to testify. Despite his claim at the outset of both Ground One and Ground Two that "the state court's decision is contrary to or

unreasonably applied clear Supreme Court case law," Petitioner has presented no authority, much less Supreme Court precedent, holding that an accused cannot effectively exercise his Fifth Amendment privilege by having his counsel invoke it on his behalf or that a criminal defendant can force a potential witness to invoke his Fifth Amendment privilege in person when the witness has counsel who represent him in the very case in which he would be incriminating himself. Petitioner's Grounds One and Two are without merit because the First District's decision does not unreasonably apply any law clearly established by holdings of the Supreme Court.

**Ground Three: Denial of Right to "Confrontation" (Right to be Present)**

In his Third Ground for Relief, Hurt asserts his right of confrontation was violated by the trial court's removal of him from the courtroom. On direct appeal he argued this claim as a right to be present at trial and the First District decided it as follows:

> **B. Second assignment of error: Hurt's removal from his trial**
>
> {¶52} Hurt's second assignment of error asserts that the trial court violated his constitutional right to be present at his trial when it removed him from the courtroom. During Hurt's trial, the trial court removed him from the courtroom on multiple days. Because Hurt's arguments are limited to his removal on the third and fourth days of trial, we limit our analysis to those days.
>
> **1. Criminal defendants have the right to attend their trials**
>
> {¶53} A trial court's decision to remove a defendant from the courtroom is reviewed for an abuse of discretion. *See Illinois v. Allen*, 397 U.S. 337, 343 (1970).
>
> {¶54} A defendant has the right to be present in the courtroom at every stage of the trial "absent waiver of his rights or other extraordinary circumstances." *State v. Williams*, 6 Ohio St.3d 281, 286 (1983). A defendant's right to be present at every critical stage of a trial is guaranteed by the United States Constitution's Sixth

Amendment's Confrontation Clause and the Fifth Amendment's Due Process Clause. *United States v. Gagnon*, 470 U.S. 522, 526 (1985); *Allen* at 338. The Ohio Constitution similarly guarantees a criminal defendant the right to be present at every stage of a criminal trial. Ohio Constitution, Art. I, § 10; *State v. Williams*, 6 Ohio St.3d 281, 286 (1983).

{¶55} Moreover, Crim.R. 43 provides that a defendant "must be present at every stage of the criminal proceeding and trial" unless the defendant's absence is voluntary or the defendant's conduct "is so disruptive that the hearing or trial cannot reasonably be conducted with the defendant's continued physical presence." The Ohio Supreme Court has described Crim.R. 43 as a codification of a criminal defendant's constitutional right to be present at trial. *Williams* at 286 ("In Ohio, the expanded scope of the Due Process Clause, at least in criminal proceedings, had been embodied in Crim. R. 43(A).").

{¶56} Like most rights, however, a defendant's right to be present at trial can be waived. Waiver of a constitutional right involves "the intentional relinquishment or abandonment of a known right or privilege." *State v. Stone*, 43 Ohio St.2d 163, 166 (1975). This court has stated that the constitutional right to be present at trial, as codified in Crim.R. 43, "is so fundamental that ... it cannot be removed except by a voluntary, intelligent and express waiver." *State v. Homesales, Inc.*, 2010-Ohio-5572, ¶ 9 (1st Dist.), quoting *State v. Sutherlin*, 111 Ohio App.3d 287, 293 (1st Dist. 1996).

{¶57} Crim.R. 43(A) provides that when a defendant is voluntarily absent after initially being present during trial, the trial court may continue the trial. But because "[v]oluntariness is an issue of fact ... the trial court must determine that the defendant is voluntarily absent before it can proceed with the trial." *State v. Carr*, 104 Ohio App.3d 699, 703 (2d Dist. 1995). We review factual findings for clear error and will not disturb those findings when they are supported by competent, credible evidence. *State v. Jackson*, 2015-Ohio-2473, ¶ 55 (9th Dist.).

{¶58} Defendants are voluntarily absent where they refuse to leave their jail cells. *State v. Grate*, 2020-Ohio-5584, ¶ 85. The Eleventh Circuit has held that, after a defendant initially refuses to come to court from jail, the defendant's subsequent repeated refusal to answer whether the defendant wants to be present can constitute a waiver of the right to be present. *United States v. Sterling*, 738 F.3d 228, 237 (11th Cir. 2013).

### 2. The trial court did not abuse its discretion in continuing trial without Hurt

{¶59} Based on the specific circumstances in this case, we hold that the trial court did not abuse its discretion by conducting trial without Hurt present.

#### a) Day four

{¶60} Hurt was present for the first three days of his trial. But on the morning of the fourth day of trial, deputies informed the trial court that Hurt had told them he did not want to go to court. Hurt told them that he "felt like his defense team wasn't working for him." The trial court ordered the deputies to bring Hurt to the courtroom. When he arrived in the courtroom, the following exchange occurred:

> COURT: And, Mr. Hurt, I will give you the option to stay and take part in your defense. At this time, would you like to do that?
>
> HURT: I keep telling you all the same thing. I keep telling you the same thing. I have a right to a fair trial. I mean, go to trial. Ain't fair.
> ...
> COURT: Okay. Would you like to stay here and participate or not? It's a yes or no question, because we've got to move on here.
>
> HURT: Proceed. But, like, I don't know what is going on. Like, I'm not comfortable with sitting here and they not doing what I asking them to do, asking them to -- asking them to say and not comfortable with doing it.
>
> COURT: Okay. I am going to ask you one more time. It's a yes or no question. Would you like to stay here and participate in your trial, or would you like to be taken back upstairs?
>
> HURT: I don't want to proceed if I'm not here. I don't know what is going on.
>
> COURT: Well, then you need to stay here. Doesn't that seem like that –
>
> HURT: That's a problem with me staying here though.

> COURT: What's the problem?
>
> HURT: I just told you. I keep saying the same thing.
>
> COURT: Well, I'm going to have to disagree with you there, but I'm not going to fight with you over what you think your attorneys are doing, because the last time I checked, you didn't graduate from law school and they did, and they are pretty highly regarded in this courthouse. Are you going to stay or not? Yes or no?
>
> HURT: I keep telling you the same thing.
>
> COURT: Okay. Then take him back upstairs because that's a no to me, to this court. All right. Thank you. We'll continue the trial without you.

{¶61} After deputies removed Hurt, his counsel stated that unless Hurt gave an unequivocal "no" on the record, the court needed "to be very careful." The trial court agreed, brought Hurt back to the courtroom, and stated:

> COURT: I'll ask you one more time. Do you want to participate in this. It's a yes–
>
> HURT: I just told you.
>
> COURT: Don't tell me you just told me.
>
> HURT: You just keep asking the same thing. I just told you. That's it.
>
> COURT: Mr. Hurt –
>
> HURT: I told you.
>
> COURT: – yes or no, would you like to stay and participate in your trial? Yes or no?
>
> HURT: You told them to take me back.
>
> COURT: Would you like to stay?
>
> HURT: I told you what I said.

> CRIMINAL BAILIFF: Yes or no? You need to say yes or you need to say no.
>
> COURT: Okay. Mr. Hurt, I'm going to take your noncompliance –
>
> HURT: I'm uncomfortable.
>
> COURT: No, no. That's okay. I'm going to take your noncompliance with answering the question as a no, and, unless you say yes or no, and tell me affirmatively you want to stay here, I'm going to send you back upstairs and we're going to continue without you. Are you going to give me an affirmative?
>
> HURT: I keep saying the same thing.
>
> COURT: Okay. I will see you later, Mr. Hurt. Thank you for your help.

{¶62} The trial court then removed Hurt from the courtroom without any method to remotely view the trial or communicate with counsel. When the jury was seated, the trial court instructed jurors to disregard Hurt's absence. Hurt was not present for the testimony from the eyewitness to Norwood's murder, the phone analyst, the responding officer to Norwood's murder, or the analyst who determined the casings found at the two crime scenes matched those found in the Jeep.

{¶63} Competent, credible evidence supported the trial court's finding that Hurt was voluntarily absent on the fourth day of trial. The trial court's exchange with Hurt began because of Hurt's initial refusal to leave the jail, and Hurt was only present in court because the trial court ordered the deputies to bring Hurt to the courtroom. While generally, a defendant's silence or refusal to answer should not be viewed as a waiver, in this case, the trial court only engaged Hurt in a discussion about whether he wanted to be present because Hurt initially refused to come to court.

{¶64} When asked by the trial court if he wanted to be present, Hurt responded both "proceed," and that he did not want the trial to continue if he was not there. Had that been the extent of Hurt's statements, his absence would have been involuntary. Instead, Hurt conditioned his presence at trial on the trial court acquiescing to his request for new counsel. For example, immediately after Hurt said he wanted to proceed, he continued, "But, like, I don't know what is

going on. Like, I'm not comfortable with sitting here and they [his counsel] not doing what I asking them to do." Hurt's conditional statements created the ambiguity that the trial court was seeking to resolve and it was reasonable for it to ask Hurt to provide an unequivocal answer to whether he wanted to attend trial.

{¶65} We find it particularly important that, after the trial court initially removed Hurt, it brought him back to give Hurt another chance to clarify his position. But Hurt continued to refuse to answer yes or no, despite the trial court's indication that absent a clear "yes," it would remove him.

{¶66} Considering Hurt's initial refusal to come to court and refusal to directly answer the trial court's question—did he want to be present for his trial—even after the trial court brought Hurt back, competent, credible evidence supported the trial court's factual finding that Hurt voluntarily waived his right to attend his trial. Accordingly, the trial court did not abuse its discretion by continuing trial without Hurt attending.

**b) Day five**

{¶67} The next morning, Hurt's counsel addressed the court:

> DEFENSE COUNSEL: ... I asked Mr. Hurt what his position is today as to being here. He said his position was the same as it was yesterday.
>
> COURT: He does not want to be here; is that correct? Mr. Hurt, you have to speak up for the record. Do you want to participate in your defense today?
>
> HURT: I told you yesterday I'm not comfortable with my attorneys and stuff like that so I don't know –
>
> COURT: I'm asking you a yes or no question. Please respond.
>
> HURT: I keep telling you the same thing.
>
> COURT: I got the explanation.
>
> HURT: Ain't nothing else for me to say.
>
> COURT: Yes or no to my question whether you would like to sit today and participate in your trial?

> HURT: Told you the same thing yesterday.
>
> COURT: Is that yes or no? Can you please give me a yes or no answer?
>
> HURT: I told you the same thing yesterday.
>
> COURT: Mr. Hurt, we will take you back upstairs. We will proceed with the trial without your presence.

{¶68} The trial court then stated:

> Again, today, he didn't refuse to come over, but he did come down and has refused on the record to participate in his defense. So at this time this court has done everything, along with the help of the attorneys and the sheriff's office frankly, to see to it that Mr. Hurt is comfortable and able to participate in his trial; but he is choosing to, for lack of a better word, manipulate the circumstances and will not sit and participate.

{¶69} The trial court instructed the jury not to consider Hurt's absence.

{¶70} Unlike the dialogue from day four, Hurt made no definitive statement that he wanted to be present. Given Hurt's counsel's representation that Hurt's position was "the same as it was yesterday," the trial court's asking Hurt whether he wanted to be present at his trial was reasonable. Considering that the trial court removed Hurt from the courtroom the day before, Hurt's continued refusal to state that he wished to be present constituted waiver.

{¶71} We note that, other than instructing the jury to disregard Hurt's absence, the trial court took no measures to minimize prejudice to Hurt's case. Because the purpose of the right to confrontation is, in part, to facilitate "full and effective cross-examination," *Kentucky v. Stincer*, 482 U.S. 730, 744 (1987), a cautionary instruction to the jury, while important, does not fully protect the interests the right to be present serves. There is no indication that Hurt's counsel was permitted to speak with Hurt on breaks. And the trial court did not facilitate remote viewing. Considering the advances in video conferencing, allowing Hurt to remotely view his trial likely would have caused minimal inconvenience and, with options to mute and hide a participant's screen, no real concern of him disrupting trial proceedings.

> {¶72} While the better practice would have been to institute additional safeguards, because that Hurt was voluntarily absent, the trial court's failure to do so did not violate Hurt's constitutional rights. *See* *State v. Evans*, 2023-Ohio-237, ¶ 34 (5th Dist.) ("Appellant did not have an absolute right to watch the proceedings by video."); *People v. Paige*, 22 N.Y.S.3d 220, ¶ 3 (2015) (stating that while courts should generally permit an excluded defendant to remotely observe the trial, it was not error to deny a request to do so under the facts of the case). The trial court did not abuse its discretion when it continued the trial without Hurt present. We overrule Hurt's second assignment of error.

*State v. Hurt, supra.*

The right to confront an adverse witness is distinct from the right of a defendant to be present at every critical stage of a criminal proceeding. Although Petitioner's counsel pleaded this claim in the Petition as a confrontation right, he argued it in the Reply as a right to be present which is the claim he exhausted in the Ohio courts. Respondent does not assert any lack of fair presentation of this claim. The Court will interpret Ground Three as raising a right to be present claim.

Here again, the state court decided the claim on the merits and its decision is entitled to deference unless it is contrary to or an objectively unreasonable application of Supreme Court precedent. Both parties cite *Illinois v. Allen*, 397 U.S. 337, 339 (1970), but the Magistrate Judge fails to see how the First District's decision here is an unreasonable application of *Allen*. It is not a matter of "flipping the presumption" as Petitioner's counsel asserts. Instead, Petitioner contumaciously refused to answer a simple yes or no question from the judge about whether he wanted to be present. That question was repeatedly put to him and he repeatedly refused to answer it. He persisted in refusing to answer even when the judge ordered his removal. If there was any error here, it was plainly invited error. The exercise of rights in a criminal trial is not a linguistic game to be won by being coy. Petitioner's Ground Three is without merit.

**Ground Four: Denial of Severance**

Petitioner was charged in the same indictment with two separate shootings in April 2020, one on the seventh and one on the fifteenth. His first set of attorneys filed a motion to sever which was not ruled on by the trial court while they were still counsel of record. On direct appeal, Hurt raised this claim as his third assignment of error and the First District decided it as follows:

> {¶73} Hurt's third assignment of error asserts that the trial court committed plain error when it failed to separate the counts arising from the Llewellyn shooting from those arising from Norwood's murder. A trial court's denial of a motion to sever counts is ordinarily reviewed for an abuse of discretion. *State v. Torres*, 66 Ohio St.2d 340, 343 (1981). **But a defendant's failure to renew a motion to sever at the close of the case waives all but plain error.** *State v. Jordan*, 2022-Ohio-2566, ¶ 40 (1st Dist.). For Hurt to prevail, he would have to demonstrate the trial court committed an obvious error that affected the outcome of the trial. *State v. Mullins*, 2024-Ohio-421, ¶ 11 (1st Dist.), quoting *State v. Sowders*, 2023-Ohio-4498, ¶ 11 (1st Dist.)(emphasis supplied).
>
> **1. Joinder and severance**
>
> {¶74} Crim.R. 8(A) permits a trial court to try multiple offenses in the same trial when the offenses are of "the same or similar character," are connected together or form parts of a common scheme, or are part of a course of conduct. Hurt does not argue that joinder was improper under Crim.R. 8.
>
> {¶75} But even if joinder is proper under Crim.R. 8, if joinder of the offenses will prejudice a defendant, the trial court "shall order an election or separate trial of counts, ... or provide such other relief as justice requires." Crim.R. 14. A defendant moving to sever must demonstrate prejudice by providing the trial court with information sufficient for the trial court to "weigh the considerations favoring joinder against the defendant's right to a fair trial." *State v. Kennedy*, 2013-Ohio-4221, ¶ 31 (1st Dist.). When the evidence is simple and

> direct, joinder is not prejudicial. *State v. Johnson*, 2016-Ohio-4934, ¶ 26 (1st Dist.).
>
> {¶76} Evidence is simple and direct, causing no prejudice to the defendant, when the evidence is uncomplicated to a degree that a jury can separate the proof required to establish the elements of each offense. *State v. Nitsche*, 2016-Ohio-3170, ¶ 87 (8th Dist.). Requiring the evidence to be simple and direct when joining offenses is intended to "prevent the jury from improperly considering evidence of various crimes as corroborative of each other. The very essence of the rule is that the evidence be such that the jury is unlikely to be confused by it or misuse it." *Id.* If a conviction is the result of the jury combining proof on all offenses and the evidence on each individual count would be insufficient to support all the convictions, joinder was prejudicial. *State v. Echols*, 128 Ohio App.3d 677, 695 (1st Dist. 1998).
>
> **2. The trial court did not err by trying the counts together**
>
> {¶77} The evidence in this case was simple and direct. There were two separate shootings, involving different victims, occurring in different locations, and on different dates. Different eyewitnesses observed and testified about the two shootings. *See State v. Decker*, 88 Ohio App.3d 544, 549 (1st Dist. 1993) ("The factual situation of each crime charged was easy to understand and was capable of segregation since the crimes charged involved different victims, different factual scenarios and different witnesses.").
>
> {¶78} We acknowledge that several witnesses testified about both shootings, including Detective McMenama, the firearms analyst, and the cell-phone analyst. And while the cell-phone and firearm evidence was complex, the ultimate conclusions that these experts offered—Hurt's cell phone was "in the area" of both shootings and shell casings found in the Jeep matched casings found at the scenes of both crimes—were not confusing. *See State v. Marshall*, 2023-Ohio-3542, ¶ 40 (6th Dist.) ("Evidence offered to prove a joined offense may be complex so long as it is not confused with evidence offered to prove the other joined offenses.").
>
> {¶79} The evidence was simple and direct and Hurt has failed to establish prejudice from the joinder of the counts. Because Hurt failed to demonstrate plain error, we overrule his third assignment of error.

*State v. Hurt, supra.*

Respondent asserts Ground Four is procedurally defaulted because Hurt's counsel did not renew the motion to sever at the close of the evidence (Return, ECF No. 13, PageID 1587). As the First District held, a claim of failure to sever must be renewed at the close of the evidence. Because it was not in this case, appellate review was only for plain error. See *Hurt* at ¶ 73.

Hurt acknowledges that trial counsel failed to renew the motion to sever and does not dispute that this is an adequate and independent state ground for decision. He claims, however, that this default is excused because the failure to renew constituted ineffective assistance of trial counsel.

Ineffective assistance of trial counsel can excuse a procedural default, but that claim must itself be submitted to the state courts and be successful before it provides that excuse. *Edwards v. Carpenter*, 529 U.S. 446 (2000); *Chase v. MaCauley*, 971 F.3d 582, 592 (6th Cir. 2020); *Scuba v. Brigano*, 527 F.3d 479, 488 (6th Cir. 2007).

Hurt presented ineffective assistance of trial counsel as his Fourth Assignment of Error on direct appeal and the First District decided it as follows:

> {¶80} In his fourth assignment of error, Hurt argues that he received ineffective assistance of counsel because his attorneys failed to argue the motion to sever. As noted, though Hurt's first set of attorneys moved to sever the counts related to the Llewellyn shooting from the Norwood murder, and his second set of attorneys adopted that motion, his second set of attorneys failed to renew the motion at trial.
>
> {¶81} A licensed attorney is presumed to be competent. *State v. Hamblin*, 37 Ohio St.3d 153 (1988). Accordingly, defendants claiming ineffective assistance of counsel bear the burden of proving their counsel was ineffective. *Id.* Defendants asserting ineffective assistance must show both that their counsel's performance was deficient, and that had counsel been effective, the outcome of the proceedings would have been different. *State v. Johnson*, 2016-Ohio-4934, ¶ 28 (1st Dist.); *see Strickland v. Washington*, 466 U.S. 668, 687 (1984).

> {¶82} As discussed above, Hurt was not prejudiced by the joinder of the counts related to the two shootings and cannot establish ineffective assistance of counsel. We overrule his fourth assignment of error.

*State v. Hurt, supra.* In deciding this ineffective assistance of trial counsel claim, the First District applied the governing standard for such claims from *Strickland v. Washington,* 466 U.S. 668 (1984).

**Ground Five: Ineffective Assistance Of Trial Counsel: Failure to Renew Severance Motion**

In his Fifth Ground for Relief, Hurt asserts he was denied effective assistance of counsel when his trial attorneys failed to renew the motion to sever at the close of all the evidence. Respondent asserts this claim is also procedurally defaulted because it was not fairly presented to the Ohio Supreme Court (Return, ECF No. 13, PageID 1590-91). Hurt replies that "[t]he Return of Writ shows that Respondent is asking the Court to be hyper technical to the point of twisting reality and jettisoning reason." (Reply, ECF No. 17, PageID 1628).

On appeal to the Ohio Supreme Court, Hurt, represented in that court by the same attorney who represents him here, stated as his Fifth Proposition of Law: "A defendant's constitutional rights to the effective assistance of counsel is violated when trial counsel's failure to request a ruling on a pending motion to sever offenses led to plain error review on appeal and therefore prejudiced the defendant on appeal." However, he argued this Proposition solely in terms of the prejudice which he claims flowed from the joinder for trial. Nothing is said in his Memorandum in Support of Jurisdiction about failure to renew the motion to sever at the close of all the evidence.

The requirement of fair presentation at each stage of state court proceedings requires reliance on the same facts and the same law at each stage. *Wagner v. Smith*, 581 F.3d 410, 415 (6th Cir. Sept. 24, 2009), citing *Alley v. Bell,* 307 F.3d 380, 386 (6th Cir.2002); *Newton v. Million,* 349 F.3d

873, 877 (6th Cir.2003). Although Petitioner did not spell out how trial counsels' failure to renew constituted deficient performance (the first prong of *Strickland*), the prejudice prong was thoroughly presented. The First District also did not discuss the deficient performance prong of *Strickland* in any depth, it apparently being well settled in Ohio law that a motion to sever is forfeited if not renewed at the close of the evidence. The Magistrate Judge disagrees with Petitioner in characterizing this argument as "hyper technical to the point of twisting reality and jettisoning reason." However, the Magistrate Judge concludes that the ineffective assistance of trial counsel claim was fairly presented to the Ohio Supreme Court by the language used in the Memorandum in Support of Jurisdiction.

On the merits, however, the Magistrate Judge concurs with the First District that severance was not constitutionally required. To obtain federal habeas relief on a misjoinder claim involving state law, a petitioner "must show that misjoinder of the counts 'result[ed] in prejudice so great as to deny a defendant his . . .right to a fair trial." *Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007)(quoting *Lane*, 474 U.S. at 446 n.8). The analysis of the First District on direct appeal is not an objectively unreasonable application of Supreme Court precedent. Because Hurt was not prejudiced by his trial attorney's failure to resurrect the severance claim because it would have been without merit. It cannot be ineffective assistance of trial counsel to fail to raise a meritless claim.

Hurt also claims any procedural default of any ground for relief[3] is excused by his actual innocence. The controlling precedent on this point is now the Supreme Court's decision in *McQuiggin v. Perkins*, 569 U.S. 383 (2013).

---

[3] Respondent asserts procedural default for Grounds Four, Five, and Six (Return of Writ, ECF No. 13, PageID 1587).

> [A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U. S., at 329, 115 S. Ct. 851, 130 L. Ed. 2d 808; see *House*, 547 U. S., at 538, 126 S. Ct. 2064, 165 L. Ed. 2d. 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U. S., at 332, 115 S. Ct. 851, 130 L. Ed. 2d. 808.
>
> * * *
>
> [A] federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown.

*McQuiggin v. Perkins*, 569 U.S. 383, 386-87 (2013).

In *Souter v. Jones,* 395 F.3d 577 (6th Cir. 2005), the Sixth Circuit anticipated *McQuiggin* by holding Congress enacted the statute of limitations in 28 U.S.C. § 2244(d)(1) "consistent with the *Schlup* [*v. Delo*] actual innocence exception." The *Souter* court also held:

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo,* 513 U.S. 298, 316 (1995)." Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error

> with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

*Souter v. Jones,* 395 F.3d 577, 590 (6th Cir. 2005).

> '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (citing *Sawyer v. Whiteley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)). And in the "gateway" context, our court has said the same thing. *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 427 (6th Cir. 2003). This means that a petitioner may not pass through the equitable gateway by simply undermining the state's case. Rather, he must demonstrate that he *factually* did not commit the crime. Of course, dismantling the state's case is *relevant* and *helpful* to the petitioner because it leaves a vacuum to be filled by an exonerative explanation; but it is not sufficient in and of itself. This distinction between exonerating evidence and impeachment evidence undergirds both of the Supreme Court's landmark equitable-exception cases. *Schlup*, 513 U.S. at 324, 115 S.Ct. 851; *House*, 547 U.S. at 552–53, 126 S.Ct. 2064.

*Hubbard v. Rewerts,* 98 F.4th 736 (6th Cir. 2024).

Hurt's only purported proof of actual innocence is an Affidavit of co-defendant Leaunte Baltimore dated August 26, 2026 (ECF No. 17-1, PageID 1643-50). The document is peculiar in form in that most of it consists of text typed by some unknown person to which the affiant has added handwritten text, often N/A as if the affiant were responding to questions. Hurt asserts the Affidavit was obtained by an unidentified private investigator: "Only recently was a private investigator finally permitted to get into Trumbull Correctional to meet with Baltimore on Hurt's behalf, and only because of that visit was the investigator able to get a new affidavit." (Reply, ECF No. 17, PageID 1632).

The Magistrate Judge finds the Affidavit unpersuasive when considered with the evidence

presented at trial. It does not identify who prepared the typewritten text which comprises most of the Affidavit. It does not explain why Baltimore could not have written an affidavit and sent it to Hurt's counsel, but instead had to wait for the unidentified private investigator to visit. It claims Hurt was not in the vehicle when the shooting took place, but admits that he had been there before the shooting, but allegedly got out. Why did he leave his cell phone behind? Who actually did the shooting? Instead of a candid report of what he knows, Baltimore's Affidavit reads like a careful dodging and weaving. Proof of actual innocence is not to be accomplished in that manner. Instead it must persuade the Court "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup, supra,* at 327. Hurt's claim of actual innocence to excuse procedural default is without merit.

**Ground Six: Conviction on Insufficient Evidence**

In his Sixth Ground for Relief, Hurt claims he was convicted on insufficient evidence. The standard for evaluating this claim was adopted by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979).

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

> could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.* A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction. *Musacchio v. United States*, 577 U.S. 237 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable

> doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). When reviewing a claim for sufficient evidence, a federal habeas court must apply a twice-deferential standard." *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam).

The First District Court of Appeals considered the sufficiency of the evidence on direct appeal and decided the issue as follows:

{¶83} Hurt argues in his fifth assignment of error that his convictions were based on insufficient evidence and against the manifest weight of the evidence[4].

**1. Sufficiency of the evidence**

{¶84} A sufficiency-of-the-evidence challenge "tests 'the adequacy of the evidence on each element of the offense.' " *State v. Wright*, 2024-Ohio-851, ¶ 25 (1st Dist.), quoting *State v. Staley*, 2021-Ohio-3086, ¶ 9 (1st Dist.). This court, viewing the evidence in a light most favorable to the state, must determine whether a reasonable fact finder could have found that the state proved beyond a reasonable doubt all the essential elements of each offense. *State v. Kendrick*, 2023-Ohio-1763, ¶ 15 (1st Dist.), citing *State v. MacDonald*, 2019-Ohio-3595, ¶ 12 (1st Dist.). This court does not weigh the evidence and when faced with evidence subject to more than one possible interpretation, we adopt an interpretation of the evidence consistent with the trial court's judgment. *Id.*

{¶85} The state argued at trial that Hurt was the person driving the Jeep at both shootings and therefore he was, at a minimum, guilty on a theory of complicity of aggravated murder (Norwood) and attempted murder (A.O. and J.G.).
{¶86} R.C. 2923.03(A)(2) provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall ... [a]id and abet another in committing the offense." The state need not charge a defendant under the complicity statute to convict a defendant on a theory of complicity. *State v. Herring*, 94 Ohio St.3d 246, 251 (2002); *see* R.C. 2923.03(F) ("A charge of complicity may be stated in terms of this section, or in terms of the principal offense.").

{¶87} To convict a defendant under a theory of aiding and abetting, the state must prove that the defendant " 'supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal.' " *State v. McFarland*, 2020-Ohio-3343, ¶ 29, quoting *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. The defendant's intent may be inferred from the surrounding circumstances, including the defendant's presence at the crime scene and conduct before, during, and after the crime. *Johnson* at 245. The presence of the defendant at the scene of the crime alone is not sufficient to prove that the defendant was an accomplice. *Id.* at 245.

[4] Because manifest weight is not a federal constitutional claim, the portion of the First District's decision on that issue is not quoted here.

**a) <u>Sufficient evidence supported attempted-murder convictions</u>**

{¶88} As an initial matter, Hurt cites R.C. 2903.02(B), which requires the state to prove a defendant attempted to cause a person's death as a proximate result of an offense of violence. But the indictment lists only R.C. 2903.02(A) in the attempt counts. Accordingly, we will analyze Hurt's sufficiency and manifest-weight arguments under the portion of the statute under which Hurt was charged in the indictment.

{¶89} To convict Hurt of attempted murder under R.C. 2903.02(A), the state was required to prove beyond a reasonable doubt that Hurt purposely engaged in conduct that, if successful, would have constituted or resulted in the offense of murder, which is defined as purposely causing the death of another. R.C. 2923.02(A); R.C. 2903.02(A).

{¶90} Hurt argues that because there was no evidence that J.G. was harmed, because neither victim testified or participated in the investigation, and because no one specifically identified a shooter, the state failed to sufficiently support the attempted-murder charges. First, the state did not need to demonstrate that either victim suffered any physical harm. It only needed to show that Hurt's conduct, if successful, would have resulted in another person's death. And a defendant may be convicted of murder based on solely circumstantial evidence. *State v. Nicely*, 39 Ohio St.3d 147, 151 (1988). And " '[c]ircumstantial evidence is not less probative than direct evidence, and, in some instances, is even more reliable.' " *Id.*, quoting *United States v. Andrino*, 501 F.2d 1373, 1378 (9th Cir. 1974). When the state produces evidence demonstrating that the defendant aided and abetted the person who pulled the trigger, that evidence sufficiently supports an attempted-murder conviction. *State v. Jones*, 2020-Ohio-4915, ¶ 46 (8th Dist.); *see* R.C. 2923.03(C) ("a person may be convicted of complicity in an attempt to commit an offense in violation of section 2923.02 of the Revised Code.").

{¶91} The eyewitness to the Llewellyn shooting testified that he saw a doorless dark-colored Jeep stop at the corner of Llewellyn and Elmore Street, where J.G., A.O., and another person were standing. The witness said that two of the Jeep's occupants stood up in the Jeep and fired shots in the direction of the three individuals on the corner. The witness testified that one of the Jeep's occupants wore a red-hooded sweatshirt and black and white slides. Surveillance footage corroborated his testimony. Video of Hurt taken at CVG the

day before the shooting showed Hurt wearing similarly colored clothes. A video recovered from Baltimore's phone showed Hurt wearing white-framed glasses similar to those worn by the driver in the surveillance footage. Hurt's phone was in the area of the shooting. Casings recovered from the Jeep matched casings found at the scene of the shooting. The evidence showed that the men on the corner fired back at the Jeep. Video taken after the Llewellyn shooting showed bullet holes in the Jeep. Hurt texted K.F. pictures of damage to the Jeep and paid for repairs. Later, officers found bullet holes in the Jeep had been patched and painted over. Considering this evidence, we hold that a reasonable fact finder could have found that the state proved beyond a reasonable doubt that Hurt attempted to murder J.G. and A.O.

b) **Sufficient evidence supported Hurt's aggravated-murder conviction**[5]

{¶92} To convict Hurt of Norwood's aggravated murder, the state had to prove beyond a reasonable doubt that Hurt, purposely and with prior calculation and design, caused Norwood's death. R.C. 2903.01(A). A person may be convicted of aggravated murder under R.C. 2903.01(A)(1) on a theory of complicity. *State v. Williams*, 2019-Ohio-2734, ¶ 39 (8th Dist.).

{¶93} The state presented evidence that occupants of a dark Jeep Wrangler shot Norwood. Various videos taken shortly before Norwood's murder showed the Jeep Hurt and K.F. rented. The Jeep drove in and around the South Cumminsville area and then followed Norwood's vehicle toward the scene of the murder. Video from just after the murder showed a similar dark Jeep driving in the direction the eyewitness testified the shooters' Jeep traveled. A video taken from Baltimore's phone minutes before the shooting showed Baltimore and a man in a green hoodie and mask in what appears to be the interior of a Jeep. An officer identified the man in the green hoodie as Hurt. The hoodie resembled a hoodie an unmasked Hurt wore in a different video taken from Baltimore's phone the day before the shooting. Hurt's and Baltimore's cell phones were together during the shooting and were "at or near" the murder location around the time the murder occurred. Shortly after the murder, Hurt's and Baltimore's phones traveled west, which was consistent with the footage of the Jeep driving toward the I-74 West entrance ramp. Finally, a shell casing recovered from the Jeep matched shell casings found at the murder scene.

---

5

Though Hurt's appellate brief mentions that the state must prove "prior calculation and design," he offered no argument. As such, we decline to address that element of aggravated murder.

> {¶94} Given the above, the state presented sufficient evidence that Hurt participated in Norwood's murder.

*State v. Hurt, supra.*

Hurt's argument on insufficiency focuses on the State's asserted failure to prove the requisite *mens rea* of prior calculation and design (Brief, ECF No. 21, PageID 1716). As footnote 3 in the First District's decision notes, this issue was not argued on appeal and accordingly was not decided on the merits by the First District. Respondent relies on this failure to show procedural default on Ground Six (Return of Writ, ECF No. 13, PageID 1587). In his Reply, Hurt asserts that his argument on the sufficiency of the evidence was "full and complete," (ECF No. 17, PageID 1634). However, the First District's decision concluded he had not made enough of a presentation on this issue to require the court to decide it. That conclusion constitutes the enforcement of the rule that an Ohio appellate court is not to decide issues not properly presented to it which is in turn an adequate and independent basis of the state court's decision not to discuss that issue.

The failure to properly present that issue to the First District is not excused by Petitioner's claim of actual innocence for the reasons discussed above. It is also not excused by ineffective assistance of appellate counsel because Petitioner has never filed an application to reopen the direct appeal under Ohio R. App. P. 26(B), the sole remedy for ineffective assistance of appellate counsel under Ohio law. See *State v. Murnahan*, 63 Ohio St. 3d 60 (1992). Ground Six should be dismissed as procedurally defaulted.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the

Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

October 7, 2026.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #